# IN THE SUPREME COURT OF THE STATE OF NEVADA

GRYPHON GOLD CORPORATION, A NEVADA CORPORATION,
Appellant,
vs.
WATERTON GLOBAL RESOURCE MANAGEMENT, INC., A CANADIAN COMPANY BASED IN TORONTO, ONTARIO; WATERTON GLOBAL VALUE, L.P., A LIMITED PARTNERSHIP FORMED UNDER THE LAWS OF THE BRITISH VIRGIN ISLANDS; WATERTON NEVADA SPLITTER, LLC, A NEVADA LIMITED LIABILITY COMPANY; AND BOREALIS MINING COMPANY, LLC, A NEVADA LIMITED LIABILITY COMPANY,
Respondents.

No. 81165

FILED

JUL 09 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from district court orders dismissing a complaint in a tort action, denying a motion to alter or amend judgment, and granting in part and denying in part a motion to retax and settle costs.[1] Second Judicial District Court, Washoe County; Scott N. Freeman, Judge.

Appellant Gryphon Gold Corporation owned and operated the Borealis Mine, a gold and silver heap-leach mine in Hawthorne, Nevada. Beginning in 2012, Gryphon entered into multiple financing arrangements

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

with respondent Waterton Global Resource Management.[2] Gryphon was unable to meet its financial obligations, and in January 2013 Gryphon and Waterton entered into a debt for equity transaction, giving Waterton a majority interest in the Borealis Mining Company in exchange for writing off some, but not all, of Gryphon's debt. Gryphon thereafter filed for bankruptcy, but the bankruptcy court eventually dismissed the case, and Gryphon lost its remaining interest to Waterton.

Gryphon claimed that Waterton engaged in predatory lending practices, depressed the mine's production, and hid gold in a pond. But the pond was drained, and the carbon testing process revealed an estimated $310,000 worth of gold and silver in the pond. Gryphon's second amended complaint asserted a claim for fraud/intentional misrepresentation, alleging Waterton made false representations throughout the bankruptcy case concerning Gryphon's value and assets and the continued economic viability of Waterton's involvement with Gryphon. Gryphon alleged it and the bankruptcy court relied upon those statements, which ultimately caused Gryphon to lose its remaining interest in the mine.

Waterton moved to dismiss for failing to plead particular facts establishing fraud, and the district court granted the motion. Gryphon then moved to alter or amend the judgment pursuant to NRCP 59 based on newly discovered evidence, but the district court denied the motion. The district court also ordered Gryphon to pay Waterton's costs, including half of the costs for the carbon testing process. Gryphon appeals.

_____

[2]Other Waterton respondents involved in this case are Waterton Global Value and Waterton Nevada Splitter. We refer collectively to the Waterton respondents, and the Borealis Mine they now own, as "Waterton."

NRCP 9(b) requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." To support a claim for fraud, the plaintiff must allege (1) a false representation made by the defendant; (2) that the defendant either knew or believed that its representation was false, or knew it had an insufficient basis for the representation; (3) that the defendant intended to induce the plaintiff to act or refrain from acting; and (4) that the plaintiff was damaged as a result. *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 446-47, 956 P.2d 1382, 1386 (1998). Similarly, to support a claim for intentional misrepresentation, a plaintiff must show the defendant (1) knowingly made a false representation, (2) with the intent to induce the plaintiff's reliance, and (3) the plaintiff was damaged as a result. *Nelson v. Heer*, 123 Nev. 217, 225, 163 P.3d 420, 426 (2007).

Gryphon has consistently alleged that its own board members, officers, and others acted favorably to Waterton's interests and at Waterton's direction. Gryphon further asserted that Waterton made false representations to the bankruptcy trustee and bankruptcy court. But, Gryphon failed to allege specific misrepresentations that Waterton made to Gryphon upon which Gryphon detrimentally relied. Thus, even assuming all allegations in the complaint are true, the record supports the district court's determination that Gryphon failed to adequately plead fraud/intentional misrepresentation under NRCP 9(b).[3] *Buzz Stew, LLC v.*

---

[3]We are not persuaded that the district court erred by dismissing the complaint without allowing Gryphon to conduct discovery. *Rocker v. KPMG, LLP*, 122 Nev. 1185, 1193-94, 148 P.3d 703, 708-09 (2006), *abrogated on other grounds by Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 181 P.3d 670 (2008), imposes a relaxed pleading standard where the information necessary to plead fraud is "peculiarly within the

*City of N. Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008) (reviewing de novo a district court's NRCP 12(b)(5) dismissal and recognizing that dismissal is appropriate when "it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [the plaintiff] to relief"). Nor did the district court abuse its discretion by denying Gryphon's subsequent motion to alter or amend the judgment on grounds of newly-discovered evidence, where the evidence upon which Gryphon based its motion was known to Gryphon before the district court dismissed its complaint and thus was not previously unavailable or newly discovered. *See AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 582, 589, 245 P.3d 1190, 1193, 1197 (2010) (reviewing a motion to alter or amend a judgment for an abuse of discretion and explaining that relief is available on grounds of newly discovered or previously unavailable evidence).

In contesting the costs award, Gryphon specifically argues that Waterton wrongly inflated counsel's travel costs and that awarding the costs associated with the carbon testing process is unfair under the facts of this case. We conclude Gryphon fails to show an abuse of discretion. *See Logan v. Abe*, 131 Nev. 260, 267, 350 P.3d 1139, 1144 (2015) (reviewing a district court's decision as to costs for an abuse of discretion). Our statutes allow for an award of costs related to counsel's relevant travel, and Gryphon does not point to specific portions of the record showing where Waterton included unrelated or unnecessary travel expenses. *See* NRS 18.005(15), (17) ("Costs" include "[r]easonable costs for travel and lodging incurred taking depositions and conducting discovery" as well as "[a]ny other

---

defendant's knowledge" and discovery is necessary to obtain those facts. But here the missing information necessary to meet NRCP 9(b)'s threshold pleading requirements was not peculiarly within Waterton's knowledge.

reasonable and necessary expense incurred in connection with the action"). As to the carbon testing process, those expenses stemmed from Gryphon's claim that Waterton was hiding gold in the pond and the parties' mutual decision to drain and test the pond for its gold content. Therefore the record supports that costs associated with the carbon testing process were reasonable and necessary here and were properly awarded pursuant to the applicable statutes.[4] *See* NRS 18.020(3) ("Costs *must* be allowed of course to the prevailing party against any adverse party against whom judgment is rendered . . . [i]n an action for the recovery of money or damages, where the plaintiff seeks to recover more than $2,500." (emphasis added)).

Accordingly, we

ORDER the judgment of the district court AFFIRMED.[5]

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, Sr.J.
Gibbons

cc:   Hon. Scott N. Freeman, District Judge
David Wasick, Settlement Judge
Woodburn & Wedge
Davis Graham & Stubbs LLP/Denver
Holland & Hart LLP/Reno
Washoe District Court Clerk

---

[4]To the extent Gryphon argues it was unfair to not factor in the gold Waterton obtained from the mine during the process, this argument is without merit as Waterton owned the mine and gold.

[5]The Honorable Mark Gibbons, Senior Justice, participated in the decision of this matter under a general order of assignment.